Hello, gentlemen. I'm calling case number 19-20160, Stelly v. Duriso. And before we get started, I would like you to note a couple things. First of all, please mute your cell phones or any other devices that might interrupt us during this presentation. And second, you're not allowed to video or record this session any more than you would be if we were in New Orleans. Of course, it's being audio recorded immediately. And finally, because of the inherent communication uncertainties regarding this kind of oral argument, we will give each of you five minutes uninterrupted in your presentation. And so with that, we will begin with Mr. Flanagan representing Duriso. Thank you, Mr. Your Honor, and may it please the court. I'm pleased to represent Paul Duriso in this challenge to a $75,000 default judgment. And in my time this morning, I'd like to address two points. The first is a point noted by another panel of this court, and that has to do with jurisdiction or a gateway issue. And we will explain that Mr. Duriso may appeal this default judgment, notwithstanding the fact that he did not apply for discretionary relief under Rule 60B in challenging the default judgment. And second, on the merits, the sole claim asserted against Mr. Duriso, intentional infliction of emotional distress, does not lie based on the facts, even assuming them to be true. And so I'll begin with the jurisdictional issue. And I think an appropriate place to start is the United States Code itself. In 28 U.S.C. section 1291, that all final decisions are appealable to the federal courts of appeal, such as this court. While there's no doubt that Rule 60B is an avenue of relief, nothing about Rule 60B contends that it is a mandatory or a box-checking avenue on the way to an appellate court. This court has noted in the SUA insurance case that default judgments, like other judgments, are immediately appealable, albeit that was a non-presidential opinion. The court has addressed the issue in a circumspect manner in some other cases, and I think they shed some light on this issue without specifically addressing it. First, I would refer to the Nishimatsu case from 1975, where Judge Wisdom reviewed a direct challenge to a default judgment, where the individual cast in judgment did not seek relief under Rule 60B. The panel of that court considered the merits of the challenge, found them to be valid, and vacated the default judgment, again suggesting that there is an opportunity for a direct appeal. The Wooten case some 40 years later actually cites Nishimatsu, and again, while there was a Rule 60B challenge in the Wooten case, the panel of this court treated the direct appeal and the 60B appeal as distinct avenues in its analysis. Other circuits are mixed. We've noted in our brief the Second Circuit, and just last year, the Sixth Circuit have held that there is no precondition to challenging a default judgment by way of Rule 60B. In fact, in the Sixth Circuit case, the court noted that it did not see anything in the federal rules that requires a party always to file a Rule 60B motion in order to appeal a and in particular, the Ninth and the Eleventh Circuits, and I think there's a practical reason for that disagreement, because in certain cases, the only way for a defendant to present evidence to make his challenge, depending on his argument, is by way of a 60B motion, really to make a record. But when we have a case like Nishimatsu, where it's essentially a Rule 8-based challenge, the question is, accepting all of these facts is true, not injecting any affirmative defenses. Is there a claim here? Well, in that case, there is no need for Rule 60B. Now, to be sure, a defendant cast by way of default who does not seek that discretionary relief gives up a lot, giving up a major opportunity for some discretion to present evidence again, but it's not the only avenue, again, as this court has shown in the Nishimatsu case. I would note finally that the First and the Seventh Circuits have a unique rule by which under Rule 60B, only mistakes and excusable neglect are factors to be considered. Traditional errors of law are deemed inappropriate for the rule, and so in that case, if the So we would submit in closing on this issue, unless there's any questions, and I do welcome your questions on this, that neither Title 28 nor Rule 60B requires that box checking, so to speak, in order to present a direct appeal to this court. And if there are no questions on that, I'll move on then to the merits of the case. I don't know, Judge Haynes, if you were asking a question. You're muted. You're muted because you gave us five minutes. Well, now the five minutes are almost up. You gave him five minutes, so I wanted to ask a question but didn't want to interfere with the five minutes. Okay, so the question is, did Ms. Stelle at any point contradict this point about Rule 60? Has Stelle taken the position in this case at any point, because I haven't found it, that you should have filed a Rule 60B? No, Your Honor, I'm not aware of that. This court issued an order on February 11 of 2020 raising the issue and asking that it be briefed, and I'm not aware of any response to that by Ms. Stelle. So if, in fact, it were mandatory, it's still not jurisdictional, and so it would have been waived by the failure to raise it, right? So even if we were to conclude that it's mandatory but not jurisdictional, it would be waived or forfeited by the failure to raise it, right? You're exactly right, and, in fact, that was the reasoning of the Sixth Circuit in the prime rate case. They said, without deciding the question, if anything, if this is sort of a claim processing rule, it would be non-jurisdictional and thus subject to waiver. And it's very clear, right, that it is not jurisdictional because the Supreme Court has been very clear that rules of civil procedure are not jurisdictional unless they mirror a statute under Hammer or Hamer et al. I agree, and I think the jurisdictional question begins and ends with Section 1291, and so there clearly is jurisdiction in this case. If I can move, then, to the merits. Well, then, on the merits, my question is, you said I didn't have to raise this below. I mean, you made the point that you can't raise something new if you've not done the Rule 60B, which I think is clearly true. So in the pleading, they said there isn't another cause of action besides this IAED, and so can you now show up the first time on appeal and say the IAED is not a proper cause of action here? I believe we can, Judge, and I think that gets down to the fundamental distinction between an allegation of fact and a question of law. The availability of another remedy is a question of law, and as I'll address, there clearly was another remedy here, and so this disfavored... Well, yes and no. I agree that what is a cause of action is sort of a legal question, but there's fact bound to it, right? There's the fact of whether he could have been sued for sexual harassment. There's the fact of whether that takes care of everything. There's the fact of what you claim are other causes of action that fit better with these facts. So while I understand the concept that the law tells us whether there's a cause of action, whether there's a cause of action rests on the facts, and you can't raise any new facts, right? I can't, but I think that based on the facts that are alleged and the law that gives us enough, and I'll bring back the Nishimatsu case where there was an allegation in that case based on a letter of credit that a particular individual who signed the letter of credit was liable, and notwithstanding that, the contract though was attached, and the panel said, well, we can consider the contract. It's attached. It shows on its face that this signatory signed as a disclosed agent, and under Texas law, like the law of other states, disclosed agents are not personally liable. So notwithstanding the allegation of fact that there was liability, the legal principles controlled, and I think in this case, when we consider among other things, and let's put aside the policy in favor of judgments on the merits and against default judgments, this is sort of a tort of last resort in Texas. It's a gap filler, and the courts have told us that when there is any other remedy, it's not available as a matter of law, and so the question here would be, was the claim against Mr. Durasso a sexual harassment claim? Because again, the Supreme Court of Texas has told us in a case called Hoffman-LaRoche that if the gravamen of the claim is sexual harassment, well, there is a remedy, and there's a Texas Commission on Human Rights, there's Title VII, and I would submit for a couple of reasons. The complaint alone tells us that the gist of this case was for sexual harassment, and the complaint is set out, as many complaints are, in various counts, and I would refer the court to count three, which is the IIED count, recites the various elements traditionally to IIED and says this, the sexual harassment and hostile work environment against plaintiff were extreme and outrageous, going beyond all possible bounds of decency and utterly intolerable in a civilized community. So what was intolerable, what was outrageous, to quote the complaint, was the sexual harassment and hostile work environment, and I think if the plaintiff would suggest that, no, this is entirely separate, my claim is not sexual harassment, it's something different, she backs into a jurisdictional problem, because the only basis for subject matter jurisdiction in this case is 1367, and the contention at page four of the plaintiff's brief that the claims against Mr. Arise out of the same transaction or the same case or controversy, I should say, as the remaining claims. If, in fact, she would now like to say that it is completely separate and it's independent, well, I think that she doesn't have a basis for subject matter jurisdiction. You didn't really argue that, did you? We did not argue that, because our position- Well, let's ignore that for the time being. What occurred to me, and I'm not quite sure how it cuts, is that there is no state cause of action for freestanding sexual harassment. In other words, the only way in which sexual harassment is actionable is under employment law, that of the state or the federal government, and therefore it's actionable only against the claim for sexual harassment. The only issue, it seems to me, is whether somehow we're going to allow the invention of an IIED claim in these circumstances, and you didn't cite the credit watch opinion of the state Supreme Court, Mr. Flanagan. Are you familiar with that one? I am, Your Honor, and I'm very regretful that I didn't cite it, because in that case, the Texas Supreme Court vacated IIED claims against both a company and its CEO that were premised on sexual harassment, again, finding that if there was a claim to be had against both, it would be under statutory law. Now, I acknowledge the case did not discuss why the principle would be the same against the CEO as the corporation, but its holding was to dismiss that IIED claim against both, and I would submit that the question becomes, is there a gap in the law merely because the remedy fashioned by the legislature, whether Congress or the Texas legislature, does not have personal liability against a supervisor? Well, let me ask this, though, because there was this discussion of whether you can make a claim for sexual harassment outside of employment. If somebody, let's say a wealthy man raped a random woman, not anything to do with employment whatsoever, could she not sue for IIED? I believe she could, because in that case, the claim, well, she would have an assault claim and a battery claim, to be sure. I think it would also be fair to say that in that instance, Judge, it's a serious question about whether the gist of that cause of action would be sexual harassment. In contrast to this case, where the complaint makes clear on pages 7 and 8, in fact, the allegations of IIED are repetitions of the gender discrimination, retaliation, and sexual harassment claims against the employer. So I see my time is winding down. I'll reserve the balance of my time that that's obviously an employer case, right? It is. Do I understand correctly that the basically just seems to be a split in the federal district courts about whether Texas law by Hoffman and bar suits involving supervisors and such? I believe there is, Your Honor. We cited some cases from the Northern District of Texas. I think there's also a long line of cases citing Credit Watch, which Judge Jones mentioned, including cases involving fraudulent joinder issues and whether the suit against the in-state supervisor would be sufficient to destroy diversity. I wanted to mention one recent case decided just weeks before we filed our brief called Roan v. Dean, the Texas Court of Appeals at Austin, an unpublished case, but does a good job of Southern District in extending Hoffman? Exactly. We would, or Your Honor, simply say that Credit Watch v. Jackson decides the question. Again, albeit without much discussion. Isn't the question better put the other way? Under Erie, it's not for us to extend IIED where the state courts have not unequivocally done so? Absolutely, Your Honor. And I know you agree with that, and we'll turn it over to Mr. Loveless. Thank you, Your Honor. What I would contend initially is that the IIED cause of action and as an element indicates that if there cannot be a reasonable remedy for the cause of action because of the extent of the egregious behavior that there is no other cause of action that would supplant the IIED. So in this particular case, I think it was extreme and outrageous conduct. One of the problems that we've had in the case is in sexual harassment and dividing that between the IIED. One of the things that I would indicate is that when we have a course of conduct by Mr. Duracell, that changed. We've talked a lot about, and I thought that was necessary, his sexual harassment, and he certainly did that initially. Later, he got suspended. He also realized that he wasn't going to be successful with the sexual harassment. And our main point in terms of the IIED is the several months that Ms. Stille was afraid to go to work at the docks. And we've indicated that. So she was simply terrified about going down there because even after he was suspended, he continued to go down. And he was not doing sexual harassment at that point, but he was doing a very outrageous conduct in terms of trying to keep her from getting a job. And he tried that over and over, and he was successful sometimes. So what I'm indicating is that his conduct changed. You have to know the beginning conduct to understand the case, but that's what happened. Is there a question on that? Yes, sir. I do. I think I do understand the sequence of events here and your pleadings indicate that she was scared to go down to the hiring hall during the months of July and August, I believe. Yes, your honor. Then in October, I believe he was permanently suspended. So you're not asserting a claim against him after October of that year? Is that right? Let's see if I understand. He was suspended. He had that revoked for a short time, and then he came back in October. And we're asserting that his mode of conduct had changed because he saw he wasn't going to be successful with the sexual harassment. No, here's what I'm confused about in the chronology. Your pleadings talk about her being deterred from going to the hiring hall for two months, which I thought were July and August. And then she had already made a complaint against him. The union had suspended him, but he went into state court, then he went into federal court, and eventually he was permanently suspended. But as I understand another part of Mr. Flanagan's argument, when you got to proving damage, I think the jury in the trial that you had, the end up judgment is for $6,400 in lost wages. And I inferred that that was for those two months. Is that correct? Your Honor, that judgment was a total judgment, including mental anguish and all of those things. I know that, but you went to trial on the allegations of his misconduct at local 21 through the month of October. Is that not correct? Because the judge granted NOV as regards any allegations against the other local, 13 whatever. 13, 16, 88. Yes, that's correct. Okay. Now, he was out of the case by then, of course. Right. Right. I'm just trying to put, this is a $75,000 default judgment. Um, and you put on evidence before Judge Werlein of mental anguish and lost wages. So what period did your client's lost wages involve in the default judgment? Uh, July and August, Your Honor. Okay. Um, given that you can't waive subject matter jurisdiction, I wanted to ask you the question about what Mr. Flanagan raised, that if you are talking about a time that has nothing to do with the sexual harassment time period, there may be a lack of subject matter jurisdiction. Can you respond to that? Well, the, this is a pendant claim and we had an individual who was, uh, had sexually harassed her, uh, in the past and that harassment was certainly, uh, recognized, uh, at this particular point, uh, the same individual is in the case and we brought the claim against him of intentional affliction of emotional distress. So, uh, I think that he's a party to the case and that was a valid, uh, approach. Well, you had evidence, didn't you, that, uh, the union was basically protecting him. I mean, what they tried to say, they, they, they claimed to suspend him, but it, but they didn't keep them away from the hiring hall and their indications that the local president supported him, I think. And, you know, the, the, those allegations are not divorced from each other. Don't you agree? I'm not sure I followed you, your honor. I'm sorry. Uh, you're saying that the, the problems that he was exhibiting lasted after he stopped the sexual harassment. Did I get that correct? Well, I'm saying that, that the union, I'm on a different, I'm off on Judge Haynes's track, and this is a friendly question. As I understood the trial evidence, uh, which I only know about from your briefs, uh, the union was, they were, parts of the union were either protecting him or they were not preventing him from bullying her and bullying the foreman who was still at the hiring hall and so on. Right? That's correct. Okay. That's all. I wanted to also ask about the Rule 60B, which I do not think is a jurisdictional question. Have you ever claimed in this case that the failure of Mr. DeRiso to bring a Rule 60B or 55 motion in the district court means that he cannot appeal? We've never claimed that, your honor. Okay. So would you agree with me that even if we were to conclude that that is a mandatory, uh, provision that you all would have waived or forfeited that by not raising it? I would agree. Okay. Um, and in the default judgment proceeding, did, didn't your client say, I'm not talking about sex harassment now. I'm talking about when Mr. DeRiso was stalking me, uh, around, hanging around my house, taking photographs, I think issuing some kind of threats. Is that correct? She did. She did say words of that effect. And when, when was he doing that? Uh, well, I don't, I don't believe she said anything about coming to her house, but, uh, she, uh, did mention the other things and he was doing that in, including the months of July and August. And, and, and leading up to that, and that's, that's why she was afraid to go down there. What is your best case for the argument that, um, the IID claim is appropriate here in a case where she has been successful on a sexual harassment claim against the employer? I believe it's the fact that, uh, the, the, the, the, the, the, the, the, the, the, there's no cause of action that, that allows, uh, her recovery for what she had to put up with during that period of time. Uh, I mean, Precedential case or a citation to a, a law, a legal case, not your factual case. I'm talking about a case that you've cited in your brief that you think, I just want to know what's the best one. Um, well, that's, and I'm not, I'm not sure which case is, uh, uh, consider the elements of, of, uh, the elements of the IID, but certainly the sixth element is, uh, you have to be able to get your damages for mental anguish. And, uh, it states there's no other, uh, there's no other remedy in the cause of action. That's, that's very clear. Do you have anything else to say? I do not. Is there another question? I do have one question. Um, the, the $75,000, uh, in default damages that you all received, uh, does that include lost wages? Where do you, where do you get the $75,000? Uh, it does include lost wages. Was that planned somewhere in the complaint? Yeah. Well, yes, we, uh, we, we, we argued for that. Yes, we did. All right, sir. I guess we'll turn back to Mr. Flanagan for rebuttal. Thank you, Your Honor. I'll begin with Judge Ho's last question, which is the status of the pleadings relative to lost wages. The complaint broke out damages according to claim. And in connection with the IIED claim in particular, there was a request for an award for loss of claim for lost wages against the unions. And we'd acknowledge that it may be a technical distinction, but when we're dealing with default judgments, we sometimes get technical rule 54 C tells us unlike other judgments that a default judgment cannot vary in kind from what was demanded in the pleadings. So we do have an issue there. And we've made that argument in our brief, ultimately the question, if we look at Hoffman and then of course, credit watch comes down. What's the remedy on that? Just to send it back and have a new calculation of judgment against you, but you would have a chance to talk about what the, what the amount should be. Exactly. You're right, Your Honor. And for that reason, it's really an alternative claim because we think under Nishimatsu, the main remedy here would be vacating if there is no gap here, because there needs to be a gap in order for there to be an IIED claim. But to answer your yes, I think that would be a remand, but then back on, back on to go back to the question of whether there is an IIED claim. I guess what I was trying to allude to earlier is if you've got relatively open, an important question, Texas law, you got federal district courts on both sides, as I think you could see that you have, is this something that you think should be certified to the Texas Supreme court? Or should we be designing this on our own? Your Honor, I think based on the credit watch case, we have the Texas Supreme court, again, albeit without a lot of discussion specifically said claims against company and CEO are vacated in that case because there was no gap. And the question really becomes if the legislature determines in a particular claim, an employment claim, we don't need personal liability to accomplish our objectives. We can make plaintiffs whole by having companies liable. That's where the deep pocket is anyway. I don't know that it would be appropriate for a court and especially a federal court to say that there was a gap. In other words, some imperfection, same thing. What if there's a cap on damages? I don't think we'd say, well, there's a gap to the extent the plaintiff's damages exceed the cap or punitive damages. We wouldn't say there's a gap because punitives are not allowed. And, you know, the Texas Supreme court has been almost reading from, from the emanations of the page, regretful they've ever opened this door. And in one of the cases, I believe Hoffman, they said, this is the sixth time in 10 years that we've had to vacate IIED awards. And I think if we look at the complaint here alone, it tells us we're not dealing with unrelated allegations. Judge Jones asked questions about what were the months in question when the plaintiff didn't go to the hole and the months were July and August, the very same months identified in the IIED claim. There's discussion about after the, the sexual propositions that were alleged ceased, what additional conduct was there? Well, that's the retaliation claim against the unions under title seven. It's alleged in paragraph 27 that the defendant prevented the gang foreman from selecting the plaintiff for jobs offered that day at the two unions. And so I would finally note that in withstanding post-trial motions of the defendants, especially local 21, the plaintiff used testimony and allegations of Mr. Duraso to keep her award against the unions. The judge cited that evidence in denying the post-trial motions as to local 21. So again, we have overlapping evidence. We don't have a gap. We also don't have unrelated facts that, again, if the facts are unrelated to sexual harassment, there may be a claim for IIED if the conduct is bordering on criminal, the Texas Supreme Court has told us. But again, back to Judge Haynes' point, if in fact we're dealing with conduct unrelated to the employment setting, well, then we have a subject matter jurisdiction question. If in fact it is all part of the same case or controversy, as has been alleged, then there is no gap because the plaintiff had a remedy and obtained a remedy from local 21. And so unless there are any further questions, I thank the court for its time. Okay, Mr. Flanagan, you are court-appointed in this instance and you have certainly done a marvelous job for your client and we appreciate that. That said, it's a very interesting case, which we will take under advisement. Thank you both.